Paulo B. McKeeby (SBN 00784571)
*Admitted Pro Hac Vice*
Email: pmckeeby@reedsmith.com
REED SMITH LLP
2501 N. Harwood Street
Suite 1700
Dallas, TX  75201
Telephone: +1 469 680 4200
Facsimile: +1 469 680 4299

Garrett C. Parks (SBN 297971)
Email: gparks@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA  94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendant
TYLER TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIANNE KOHLMANN,<br><br>             Plaintiff,<br><br>     vs.<br><br>TYLER TECHNOLOGIES, INC., an entity; and DOES 1 through 25, inclusive,<br><br>             Defendants. | Case No. 3:20-cv-00861 JCS<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Complaint filed:   January 6, 2020<br><br>Honorable Joseph C. Spero |

Plaintiff Marianne Kohlmann ("Plaintiff") and Defendant Tyler Technologies Inc., ("Tyler" or "Defendant") (together, the "Parties") submit their Joint Case Management Conference Statement and accompanying Proposed Order pursuant to the Standing Order for all Judges of the Northern District of California and Local Rule 16-9.

1. <u>Jurisdiction & Service</u>

The Parties agree there are currently no disputes as to subject matter jurisdiction, personal jurisdiction, venue, or service. All parties have been served.

2. <u>Facts</u>

<u>Plaintiff</u>

Plaintiff was an employee of Defendant from May 10, 2018 through September 25, 2018. As part of her training process, Plaintiff was required to perform several assessments known as facilitations. Plaintiff's first facilitation took place on June 25, 2018, and she was given an "acceptable" result for this facilitation.

Plaintiff, a breast cancer survivor, was diagnosed with a recurrence of breast cancer on June 26, 2018. Following this diagnosis, Plaintiff experienced significant anxiety and had difficulty sleeping. Within days of learning of her diagnosis, she informed her then supervisor, Carrie Giesy, and requested time off to have surgery. Following the revelation of her cancer, Defendant never initiated any inquiries into whether Plaintiff needed any accommodations, including additional time to prepare for her other facilitations.

Plaintiff was given a topic for her second facilitation on July 9, 2018 and the facilitation itself was scheduled for July 19, 2018 in Maine. On July 16, 2018, Plaintiff departed for Maine. On the night of July 18, 2019, another employee of Defendant's, who was staying in the room next to Plaintiff held a loud party in his room, causing significant noise to permeate into Plaintiff's room. This disturbance along with the severe anxiety Plaintiff was already experiencing on account of her cancer, prevented her from getting any sleep that night. Early in the morning of July 19, 2018, Plaintiff requested an accommodation of more time to prepare for this second facilitation. After some exchanges back and forth between Jennifer Turgeon, a trainer who worked for Defendant, Plaintiff received a phone call from Kate Wilber, a human resources employee of Defendant.

During this phone call, Ms. Wilber severely castigated Plaintiff, telling her that Defendant had high expectations from its employees, that the Implementation Consultant role was a difficult role, and suggested "in light of your health issues" such a role "is inconsistent with your career choice." Because Ms. Wilber did not suggest any particular accommodations, or another role with Defendant that involved less travel, it was clear to Plaintiff that Ms. Wilber was suggesting that she

should resign from Tyler. Plaintiff defended herself, explaining to Ms. Wilber that she could not function on no sleep while she had an active breast cancer recurrence. Defendant subsequently moved the facilitation by less than one day, to the morning of July 20, 2018, calling this move an "exception" "due to your illness." Defendant subsequently failed Plaintiff by giving her an "Inconsistent" rating on the second facilitation, prefacing the grade sheet with a lengthy note calling attention to the fact that Plaintiff needed the facilitation moved "due to her illness."

On July 27, 2018, Plaintiff had a "facilitation review" phone call with Scott Parks, a Director employed by Defendant. When he inquired from Plaintiff if there was something that had changed between the first facilitation and the second, Plaintiff told him that she had been diagnosed with breast cancer following the first facilitation.

Plaintiff had breast cancer surgery on August 8, 2018. Though her physician advised her that she should take at least two to three weeks off to recuperate following surgery, Plaintiff was given less than a week off and reported back to work on August 15, 2018, despite being in immense pain.

Plaintiff's third facilitation was scheduled for August 17, 2018. Though Defendant agreed to Plaintiff's request to hold the third facilitation remotely, it never asked her whether she needed any additional accommodations, including additional time to prepare for this third facilitation, given that it was occurring only two days following her return to work. Additionally, the short period of time given to Plaintiff to prepare was inconsistent with Defendant's protocol, which Plaintiff was told was to give topics to trainees one week prior to the facilitation. Moreover, in stark contrast to other trainees, Plaintiff was given a significantly more complicated topic. Plaintiff nonetheless covered all the points in the presentation, yet received an "Inconsistent" rating. Plaintiff contacted her supervisor, Ms. Cardinale to strongly dispute this "Inconsistent" rating, and was informed by Ms. Cardinale on August 23, 2018, that she would look into it, but never got back to Plaintiff.

Following her third facilitation, Plaintiff was asked to "shadow" other employees onsite at client locations, including Glendale, California and Hanford, California. Though Plaintiff was in severe pain from the seven large incisions she had as a result of her surgery, she nonetheless made these trips so as not to displease Defendant.

On September 10, 2018, Plaintiff was given a written "Performance warning" by Mr. Parks

and was told that she would have to be graded higher on her fourth facilitation or would be terminated. The performance warning stated the dates when Plaintiff was to receive a topic and the date of the fourth facilitation. Plaintiff noticed that they topic for the fourth facilitation would only be released on one day before the facilitation, which was to be held on September 20, 2018. Plaintiff asked Mr. Parks for additional time to prepare for the final presentation, but this request was denied.

On September 13, 2018, Plaintiff was in severe pain and nearly passed out at a client site in Hanford, California. Plaintiff called notified Ms. Cardinale of her medical complications, including the severe pain she was in from the skin grafts and stitches and sought permission to stay overnight. Ms. Cardinale informed Plaintiff that she had spoken with Mr. Parks regarding the situation, and gave Plaintiff permission to fly home the next day. Despite being aware of Plaintiff's medical complications, neither Mr. Parks, nor Ms. Cardinale, nor any other person employed by Defendant, initiated any inquiry into whether Plaintiff needed any accommodations to recover from the post-surgical complications she was experiencing, including whether she needed any additional time to prepare for her fourth facilitation.

One September 20, 2018, Plaintiff had her fourth facilitation. At the outset of the facilitation, Plaintiff noted that she was given less than twenty-four hours to prepare for the facilitation, in contrast to Defendant's protocol. Defendant rated Plaintiff an "Inconsistent" on this fourth assessment and terminated her on September 25, 2018.

Plaintiff contends that Defendant discriminated and harassed her on account of her cancer and subsequent post-surgical complications, failed to offer her adequate accommodations when it was aware she needed them, retaliated against her for requesting accommodations, failed to prevent discrimination, harassment, and retaliation against her, and terminated her on account of her medical condition and disability.

### Defendant

Defendant denies Plaintiff's allegations based on Plaintiff's lack of evidence of discriminatory intent as well as its affirmative defenses. Defendant therefore disputes liability as well as damages.

Defendant hired Plaintiff as an Implementation Consultant in May 2018. Defendant requires all hires in this position to successfully complete four (4) training assessments over the first

approximately ninety days of their employment.  Plaintiff's first assessment was scheduled for June 25, 2018.  Plaintiff missed this assessment and, after Defendant's representatives inquired as to the reason for Plaintiff's absence, Plaintiff informed Defendant she had a medical issue, the nature of which Plaintiff did not disclose, that caused her to miss the assessment and she requested to reschedule it for the next day.  Although Plaintiff should have provided advance notice that she was going to miss the assessment, Defendant accommodated Plaintiff's request.  Plaintiff completed the first assessment with a rating of "acceptable" – a passing grade.

Plaintiff's second assessment was scheduled for July 19, 2018.  That morning, at 3:22 a.m., Plaintiff emailed Defendant to again reschedule the assessment because of an unspecified illness, lack of sleep the night before because of "loud neighbors," and "running on empty from travel."  Despite the untimely notice and the flimsiness of the explanations from Plaintiff, Defendant again accommodated her request and rescheduled her second assessment.  Plaintiff completed her second assessment on July 20, 2018, and received a failing rating of "inconsistent."

Plaintiff's third assessment was scheduled for August 6, 2018.  Plaintiff informed Defendant that she had a medical procedure scheduled for August 8, 2018 and that her doctor was going to place her off work until August 15, 2018 with restrictions on her ability to travel through August 28, 2018.  Plaintiff asked Defendant if her third assessment could occur after August 15 and be conducted remotely as a result of her inability to travel.  Defendant agreed to provide Plaintiff those accommodations and scheduled her third assessment for August 17 (which would give Plaintiff two days – August 15 and 16 – to prepare for the assessment, the same amount of time others received).  Plaintiff was appreciative of Defendant's efforts to accommodate her, agreed to this schedule, and made no other requests for accommodations for this assessment.

On August 17, 2018, Plaintiff completed her third assessment and received the rating of "inconsistent" – again, a failing grade.  As a result, on September 10, 2018, Plaintiff received a written performance warning from Defendant, which explained to her that her failing the fourth assessment could result in her termination.

On September 19, 2020, Plaintiff received the topic for her fourth assessment, and, on September 20, 2018, she completed her fourth assessment remotely.  This is the same schedule that

all other employees had for their fourth assessment and, specifically, all employees are provided one day to prepare after they receive the subject of their assessment.  Plaintiff did not request any accommodations for this assessment.  Plaintiff's rating on the fourth assessment was "unsatisfactory."  Defendant terminated Plaintiff for poor performance on September 25, 2020.

At no time during her employment did Plaintiff make any complaints of discrimination, failure to accommodate, harassment, retaliation, or any other alleged unlawful acts by Defendant. To the contrary, Defendant granted every request Plaintiff made for accommodations (e.g., time off, no travel, remote assessments, scheduling changes, etc.).  Plaintiff's termination was based exclusively on her inability to successfully complete the implementation assessment process, a requirement for all employees in Plaintiff's position.

In February 2019, Plaintiff obtained alternate employment at a company in Walnut Creek, California, and earns a base salary that is the same as her salary at Defendant. As of this submission, Defendant's understanding is that Plaintiff remains employed at that company.

3.Legal Issues

The Parties dispute legal issues including, but not limited to, the following:

i.Whether Plaintiff was unlawfully discriminated against on the basis of a disability or other qualifying medical condition in violation of the California Fair Employment and Housing Act ("FEHA");

ii.Whether Plaintiff was unlawfully harassed on the basis of a disability or other qualifying medical condition in violation of the FEHA;

iii.Whether Defendant failed to engage in the interactive process with Plaintiff in violation of the FEHA;

iv.Whether Plaintiff requested and was not provided a reasonable accommodation by Defendant in violation of the FEHA;

v.Whether Plaintiff was retaliated against by Defendant in violation of the FEHA;

vi.Whether Defendant failed to prevent discrimination, harassment, and retaliation;

vii.     Whether Plaintiff was wrongfully terminated by Defendant;

viii.    Whether Plaintiff suffered emotional distress that could be attributed to conduct by Defendant;

ix.      Whether Plaintiff suffered any damages attributable to Defendant and, if so, the amount of those damages; and

x.       Whether Plaintiff's causes of action are barred, in whole or in part, by Defendant's affirmative or other defenses.

4.  Motions

Defendant anticipates filing a Rule 56 motion for summary judgment or summary adjudication.  The Parties anticipate the possibility of bringing motions in limine prior to trial, although neither Party can anticipate the grounds for those motions at this time. If a discovery dispute arises that the Parties do not resolve through the meet and confer process, the Parties may bring discovery motions.

5.  Amendment of Pleadings

The Parties do not anticipate amendment of the pleadings at this time.

6.  Evidence Preservation

The Parties agree to preserve all relevant evidence and intend to work cooperatively on ESI matters as they arise throughout the case.

7.  Disclosures

The Parties previously exchanged General Order 71 disclosures, which supersede their obligations to serve Rule 26 disclosures.

8.  Discovery

The Parties will conduct discovery pursuant to the applicable Civil Rules, including taking depositions.

The Parties will meet and confer to set discovery deadlines.  The Parties agree to follow the Federal Rules of Civil Procedure regarding discovery.  The Parties reserve the right to seek to conduct additional discovery depending on the facts and information revealed during discovery.  The

Parties agree to meet and confer in good faith to resolve any discovery issues. Should the Parties be unable to resolve discovery issues, the Parties may bring discovery motions before the Court.

9.  Class Actions

Not applicable.

10. Related Cases

Not applicable.

11. Relief

### Relief Sought by Plaintiff

Plaintiff seeks judgment in her favor, and back pay, emotional distress damages, attorneys' fees and costs, and punitive damages.

### Relief Sought by Defendant

Defendant reserves its right to seek attorneys' fees and costs, as appropriate.

12. Settlement and ADR

The Parties have discussed ADR and will be prepared to further discuss it at the case management conference.

13. Consent to Magistrate Judge for all Purposes

Yes. *See* Dkt. Nos. 9-10.

14. Other References

Not applicable.

15. Narrowing of Issues

Not at this time. Defendant reserves the right to move to bifurcate the trial as to punitive damages, if necessary. If the case does not resolve through mediation or other ADR process, the Parties agree to meet and confer as appropriate with regard to narrowing of the issues, stipulations, and other matters prior to trial.

16. Expedited Trial Procedure

Not applicable.

17. Scheduling

The Parties believe this matter will be ready for trial around September 27, 2021.

JOINT CASE MANAGEMENT STATEMENT

Joint Proposed Schedule

The Parties propose a discovery cutoff of May 14, 2021, the last date to file dispositive motions of July 8, 2021, expert discovery cutoff of July 8, 2021, and a trial date of September 27, 2021.

Trial

The Parties anticipate a trial lasting approximately seven days.

18.   Disclosure of Non-party Interested Entities or Persons

Both parties have filed the "Certification of Interested Parties" required by Civil Local Rule 3-15.

Plaintiff certifies that she is an interested person and discloses no other interested persons or entities.

Defendant certifies that it is an interested entity and discloses no other interested entities.

19.   Professional Conduct

The Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

20.   Other Matters

Not at this time.

DATED:  May 1, 2020                REED SMITH LLP

By: */s/ Garrett C. Parks*
      Paulo B. McKeeby *(Pro Hac Vice)*
      Garrett C. Parks
      Attorneys for Defendant
      Tyler Technologies, Inc.

DATED:  May 1, 2020                JHANS LAW

By: */s/ Siddharth Jhans*
      Siddharth Jhans
      Attorneys for Plaintiff
      Marianne Kohlmann

# SIGNATURE ATTESTATION

Pursuant to Local Rule 5-1(i)(3), I, Garrett C. Parks, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories by a conformed signature (/S/) within this e-filed document.

Dated: May 1, 2020

REED SMITH LLP


By: */s/ Garrett C. Parks*
    Paulo B. McKeeby *(Pro Hac Vice)*
    Garrett C. Parks
    Attorneys for Defendant
    Tyler Technologies, Inc.